**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JIANGCHUAN LIU,<br>*Plaintiff*,<br><br>v.<br><br>SCHEDULE A DEFENDANTS,<br>*Defendants*. | **Case No. 2:26-cv-01516-MJH**<br><br>**Hon. Judge Marilyn J. Horan** |

**DEFENDANTS HCZIITE AND JUSPER'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND TO THE ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

Defendants FoShanShiZhiTengHuoJiaZhiZaoYouXianGongSi (f/k/a "Hcziite," d/b/a "Hczhi," identified on Schedule A to Complaint as "Hcziite" in duplicative nos. 16 and 27) and FoShanShiHongChuangJinShuZhiPinYouXianGongSi (d/b/a "Jusper," identified on Schedule A to Complaint as No. 20) (collectively, "Defendants"), appearing specially and expressly preserving all defenses under Fed. R. Civ. P. 12(b), submit this brief in opposition to Plaintiff's motion for a preliminary injunction (ECF No. 10) and in response to the Court's October 8, 2026 Order to Show Cause (ECF No. 28). Plaintiff seeks to convert an *ex parte* Temporary Restraining Order ("TRO") into a preliminary injunction based on alleged infringement of U.S. Design Patent Nos. D1,021,425 (the "'425 Patent") and D1,058,187 (the "'187 Patent"). Plaintiff's preliminary injunction motion must be denied because Plaintiff fails to establish personal jurisdiction, improperly joins dozens of unrelated sellers, and cannot demonstrate likelihood of prevailing on its claims for infringement.

## I. LEGAL STANDARD

"When ruling on a motion for preliminary injunctive relief, a district court must consider four factors: (1) the likelihood that plaintiff will prevail on the merits at final hearing; (2) the extent to which plaintiff is being irreparably harmed by the conduct complained of; (3) the extent to which defendant will suffer irreparable harm if the preliminary injunction is issued; and (4) the public interest." *Pappan Enter. v. Hardee's Food Sys., Inc.,* 143 F.3d 800 (3d Cir. 1998); *see also AT&T Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994).

## II. ARGUMENT

Plaintiff's request for a preliminary injunction must fail because it is based on procedurally defective Complaint, and because Plaintiff fails to satisfy the demanding four-factor preliminary injunction test.

### A. Defendants Are Improperly Joined.

Under 35 U.S.C. § 299, parties that are accused infringers of a patent may be joined in a single action as defendants only if a right to relief "is asserted against the parties jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" that involve making, using, importing, offering, or selling "the same accused product or process," *id.* § 299(a)(1), and only if there are questions of fact common to all defendants that will arise. *Id.* § 299(a)(2). Importantly, Congress expressly prohibited the practice of lumping independent competitors into a single lawsuit simply "based solely on allegations that they each have infringed the patent or patents in suit." *Id.* § 299(b).

Here, Plaintiff did little more than using the boilerplate Schedule A case language alleging that all defendants are "working in active concert . . . in the same transaction, occurrence, or series of transactions or occurrences." Compl. at 7, ¶ 34 (ECF No. 1). The Complaint fails to identify what the alleged "transaction, occurrence, or series of transactions or

occurrences" are. Neither does it shed any light as to why defendants, operating on distinct platforms such as Amazon, eBay, Walmart, and SHEIN (*see* Schedule A, ECF No. 1-3), are "working in active concert." Rather, Plaintiff blatantly misrepresented the fact by alleging that each defendant "attempts to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their operation, utilizing fictitious Seller Aliases and providing no further identifying information, further establishing a logical relationship amongst Defendants." *Id.* at 8, ¶ 32. In fact, Defendants provides their true legal entity identifications on their respective seller detail pages, which have been verified by at least Amazon.com and are conspicuously displayed on such seller detail pages. *See* **Exh. A**, Seller Profile Page of Defendants. Given the Congress's express prohibition against joining multiple defendants in one patent suit based solely on an allegation of infringement, the Complaint runs afoul of 35 U.S.C. § 299(b).

Further, Plaintiff misrepresented the fact by stating that all defendants are "making, using, offering for sale and/or selling of the same accused product." Compl. at 8, ¶ 33 (ECF No. 1). The defendants' accused products are not the same. At the very least, none of the five defendants who have appeared in this case shares the exact same product design, and their respective products vary greatly in at least the frame proportions, base structures, header panels, and bracings.

These salient distinctions, which are equally available to the public and Plaintiff (when Plaintiff conducted the pre-litigation investigation), are shown in the chart on the following page:

| Hcziite (No. 16/27)<br>ASIN: B0DM7DN875 | Jusper (No. 20)<br>ASIN: B0D815SR4C | Asee'm (No. 2)<br>ASIN: B0F1YN1X8Z |
|---|---|---|
|  |  |  |
| CHOEZON DIRECT (No. 3)<br>ASIN: B0DB4BGX2Q | ZZM Direct (No. 18)<br>ASIN: B0DRYDBRZW | /// |
|  |  | /// |

Attached jointly hereto as **<u>Exhibit B</u>** are the true and correct full printouts of selected product listing pages by the above-identified defendants, accessed by the undersigned counsel on October 30, 2026 via the product ASINs identified in the TRO (ECF No. 28).

Because the defendants sell structurally different accused products and lack any shared transaction or occurrence beyond the mere allegation of infringement, Plaintiff's mass joinder and boilerplate pleadings reflect the exact procedural abuses that judges in the Western District of Pennsylvania have firmly rejected. Addressing the systemic overreach inherent in mass-

defendant Schedule A litigation, Judge J. Nicholas Ranjan issued a comprehensive standing order establishing rigorous threshold requirements for such actions. *See* "Schedule A" Case Standing Order, *Belorgey v. Zeiyignr*, No. 2:25-cv-00916-NR (W.D. Pa. July 3, 2025) [ECF No. 13]. Recognizing that Schedule A actions constitute "extraordinary exceptions to the normal rules," Judge Ranjan ordered that "each complaint must name a single defendant or group of defendants acting under the same operator, requiring a separate filing fee for each." *Id*. at 2. Plaintiff has completely ignored this standard, instead lumping over thirty independent competitors – including Hcziite and Jusper – into a single action to avoid paying proper filing fees, in direct violation of 35 U.S.C. § 299(b). Therefore, broad equitable relief against Defendants in this improperly consolidated action must be denied.

**B. The Complaint Fails to Plead Personal Jurisdiction as to Defendants.**

A preliminary injunction cannot issue against parties over whom the Court lacks personal jurisdiction. *See Celgard, LLC v. LG Chem, Ltd*., 624 F. App'x 748, 751 (Fed. Cir. 2015) ("A district court cannot enjoin a party if it does not have jurisdiction over that party."); *see also SAE Int'l v. Int'l Aerospace Quality Grp. A.I.S.B.L.*, No. 2:25-cv-00268-WSH, ECF No. 73 at 11-12 (W.D. Pa. Aug. 26, 2025) (denying preliminary injunctive relief where personal jurisdiction was lacking).

To establish specific personal jurisdiction over out-of-state defendants operating commercially interactive websites, the Third Circuits noted that "there must be some evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its website to the state, knowingly interacting with residents of the forum state via its website, or through sufficient other related contacts." *Toys "R" Us, Inc. v. Step Two, SA*, 318 F. 3d 446, 454 (3d Cir. 2003).

Plaintiff's Complaint is a boilerplate "Schedule A" pleading that names dozens of independent seller aliases based on generalized allegations of online sales into the United States. The Complaint is devoid of defendant-specific factual allegations establishing that Hcziite or Jusper purposefully availed themselves of the privilege of conducting activities in the Western District of Pennsylvania. Neither does Plaintiff's brief shows specific facts as to purposeful direction of activity into this forum by these specific Defendants – such as targeted sales or advertising. Since Plaintiff fails to make a prima facie showing of personal jurisdiction over Defendants, the requested preliminary injunction should not issue.

**C. Plaintiff Is Unlikely to Succeed on the Merits Because Defendants Did Not Infringe the Patents-in-Suit.**

This Court may dismiss a design patent infringement claim on a Rule 12(b)(6) motion upon a showing that no reasonable factfinder could find infringement. *See Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 933-34 (Fed. Cir. 2014) (affirming a grant of a motion under Rule 12(b)(6) because the district court "properly concluded that 'plain differences' exist between the accused products and the patented design").

"Determining whether a design patent has been infringed is a two-part test: (1) the court first construes the claim to determining its meaning and scope; (2) the fact finder then compares the properly construed claim to the accused design." *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1341 (Fed. Cir. 2020). In design patent cases, the drawings typically set the scope of the design patent claim. *See Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008)(*en banc*).

Under the "ordinary observer" test, an accused product infringes a design patent if "in the eye of an ordinary observer . . . two designs are substantially the same," such that "the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to

be the other . . . ." *Gorham Co. v. White*, 81 U.S. 511, 528 (1871); *Egyptian Goddess*, 543 F.3d at 672 (making the "ordinary observer" test the sole test for determining design patent infringement).

Here, the Patents-in-Suit and Defendants' accused products are plainly distinct. Attached as exhibits C and D are the photographs of the respective accused products sold by Hcziite and Jusper, taken by Defendants' respective representatives on October 31, 2026. The salient dissimilarities are summarized in the following side-to-side comparison chart:

| **Plaintiff's Patents** | **Hcziite's Product** | **Jusper US's Product** |
|---|---|---|
| <br>The '425 Patent, Fig. 2<br><br>The '187 Patent, Fig. 2 | <br>Hcziite sold at least two variants. One variant has a foot bat. *See* above screenshot from Exh. B.<br><br>The other variant of Hcziite's product has no foot bar. *See* Exh. C. | <br>*See* Exh. B<br><br>*See* Exh. D |
| • The defining ornamental feature of the lower corner is a prominent, solid, quasi-triangular plate gusset. | • Both Defendants' products entirely omit the triangular plate gusset. There is no triangular, trapezoidal, or angled plate bracing the junction between the foot bar and the vertical post. The vertical post meets the horizontal foot bar at a stark, unbraced 90-degree T-joint. | |

<table>
<tr>
<td><br>The ’425 Patent, Fig. 8<br><br>The ’425 Patent, Fig. 9</td>
<td><br>See Exh. B<br><br>See Exh. C</td>
<td><br>See Exh. B<br><br>See Exh. D</td>
</tr>
<tr>
<td>• Plaintiff’s ’425 Patent claims a smooth caster horn with a clean, continuous dome over the top of the wheel.<br>• The wheel axle terminates in a prominent, raised hexagonal bolt head featuring distinct planar facets and sharp geometric edges protruding outward from the fork leg.<br>• The upper swivel raceway shows a recessed annular collar with a visible downward-facing interior ring seated directly beneath the mounting bar.</td>
<td colspan="2">• The casters feature a stamped, multi-tiered swivel crown with visible ridges. There is a circumferential center groove, unlike the smooth tread profile shown in Figure 9 of the ’425 Patent.<br>• The axle terminates in a smooth, circular/round rivet head with a shallow concave center. It completely lacks hexagonal flats, corners, or wrench flats, presenting a circular stamped appearance.<br>• The top swivel mechanism consists of a multi-tiered, pressed-metal dome with prominent concentric stamped ridges, topped by an exposed threaded stem and hexagonal tightening nut.</td>
</tr>
</table>

Although on a conceptual level the products are all movable display stands with rolling wheels and vertical posts, “[s]imilarity at this conceptual level, however, is not sufficient to demonstrate infringement of the claimed designs.” *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1336 (Fed. Cir. 2015). An ordinary observer—giving such attention as a purchaser usually gives – would not find Defendants’ products substantially the same as Plaintiff’s

patented designs, when the omission of the solid triangular plate gusset in Defendants' products fundamentally alters the visual weight and geometry of the base, and the addition of protruding mechanical foot-brake pedals on Defendants' casters breaks the streamlined silhouette claimed in Figures 8 and 9 of the '425 Patent.

Because the functional features (such as casters, grids, and T-feet) carry no ornamental weight, the ordinary observer would easily notice the differences in the frame proportions, base configurations, and structural bracings between Defendants' actual products and the Patent-in-Suit. Consequently, Plaintiff cannot establish a likelihood of success on the merits.

**D. Plaintiff Faces No Irreparable Injury and Any Alleged Harm is Purely Monetary.**

Plaintiff's alleged injuries are fully compensable with money damages. In an e-commerce marketplace such as Amazon, every transaction, unit sold, price point, and customer return is comprehensively logged and permanently recorded. If Plaintiff ultimately prevails on his patent claims at trial, calculating reasonable royalties or lost profits under 35 U.S.C. § 284 will be a straightforward accounting exercise. Indeed, Plaintiff's own request for an asset restraint to secure funds for a future monetary judgment concedes that his injury is purely financial.

Furthermore, Plaintiff's own delay negates any claim of irreparable harm. The '425 Patent was issued in April 2024, and the '187 Patent was issued in January 2025. Defendants' listings have been active and publicly visible on Amazon for an extended period, yet Plaintiff waited until late 2026 to seek emergency *ex parte* relief. Such unexcused delay demonstrates that there is no imminent, irreparable harm justifying emergency equitable relief.

**E. An Injunction Would Inflict Immediate, Unwarranted, and Irreparable Injury on Defendants.**

Defendants would face devastating and unrecoverable harms if an injunction issues. Although the Court declined Plaintiff's proposed blanket fund freeze, third-party platforms such

as Amazon routinely interpret broad TRO asset language by freezing all seller funds across the board. This includes freezing the proceeds of completely unrelated, unaccused inventory, cutting off Defendants' operational cash flow, and crippling their ability to pay suppliers, logistics partners, and employees.

Further, when an Amazon product listing is suspended or suppressed via an injunction, its search ranking plummets, and its customer reviews stagnate, because Amazon's sales performance depends entirely on algorithmic metrics. Even if Defendants later prevail on the merits, this algorithmic standing cannot simply be restored by an order of the Court, resulting in permanent commercial devastation.

Because Plaintiff asserts a quantifiable monetary loss against Defendants facing operational paralysis and algorithmic destruction under an inadequate bond (described below), the balance of hardships firmly bars preliminary injunctive relief.

**F. The Security Bond Is Inadequate.**

Finally, Federal Rule of Civil Procedure 65(c) mandates that the movant give security in an amount the court considers proper to pay costs and damages sustained by any party found to have been wrongfully enjoined. The current $5,000 security bond posted by Plaintiff is grossly inadequate. When apportioned among more than thirty-five Schedule A defendants, the bond represents a mere approximately $140 in security per defendant. This trivial amount provides zero practical protection against the thousands of dollars in lost inventory turnover, lost revenue, and account damages that Defendants would suffer had their accounts been restrained.

## II. CONCLUSION

For the foregoing reasons, Defendants Hcziite and Jusper respectfully request that the Court deny Plaintiff's Motion for a Preliminary Injunction, discharge the Order to Show Cause, and dissolve the TRO as to these Defendants.

Respectfully Submitted,

Dated: November 3, 2026

By: /s/ Bole Yuan
Bole Yuan

**LAW OFFICE OF BOLE YUAN, ESQ.**
204 S 3rd St
Philadelphia, PA 19106
stevenyuan@lawvictor-ip.com
Tel: 215-901-8324
Pa. Bar ID No. 327183
(Admitted to Practice in W.D. Pa.)
*Attorney for Defendants Hcziite and Jusper*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was electronically filed on the date below with the Clerk of the Court using the CM/ECF system, which will automatically send an email notification of such filing to all registered attorneys of record.

Dated: November 3, 2026

By: /s/ Bole Yuan
Bole Yuan

**LAW OFFICE OF BOLE YUAN, ESQ.**
204 S 3rd St
Philadelphia, PA 19106
stevenyuan@lawvictor-ip.com
Tel: 215-901-8324
Pa. Bar ID No. 327183
(Admitted to Practice in W.D. Pa.)
*Attorney for Defendants Hcziite and Jusper*